UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
YAMANI RAVENELL,

                            **MEMORANDUM & ORDER**

              Petitioner,                        05-CV-594 (NGG)

      -against-

WILLIAM E. PHILLIPS, Superintendent,
Green Haven Correctional Facility,


             Respondent.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

      Petitioner pro se Yamani Ravenell ("Petitioner") brings this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Petition (Docket Entry #1).) Petitioner challenges his conviction in New York Supreme Court, Kings County for three counts of Robbery in the First Degree. For the reasons set forth below, the Petition is DENIED.

I.    **Background**

      This case arises out of two robberies in October and November of 1999 of bodegas located on Patchen Avenue in Brooklyn. The evidence presented at trial supports the following statement of facts.

      On the morning of October 21, 1999, Petitioner, his co-defendant, Ralph Chellel ("Chellel"), and another accomplice robbed Blas Taveras, the cashier at a bodega at the corner of Patchen Avenue and Macon Street. (Tr. 856-57, 862-63, 866.) Chellel pointed a pistol at Taveras and ordered him to turn over all the money in the bodega. (Id. at 863, 867.) The three men took the money from the cash register, as well as several packs of cigarettes and an envelope containing more than $700. (Id. at 863-65, 871.)

1

On November 26, 1999, a surveillance camera recorded two men wearing masks and hoods robbing a bodega at the corner of Patchen Avenue and Putnam Avenue. (Id. at 151, 163-66, 211, 1341.) The men ordered the cashier to empty the cash register and give them money. (Id. at 168.) When the cashier could not open the cash register, the robbers took it with them. (Id. at 171.) Police officers arrived at the bodega in time to witness the robbers running to a Chevrolet Monte Carlo parked around the corner from the bodega. (Id. at 439-40, 603.) The robbers' escape was blocked by a police car. (Id. at 441.) Chellel and Petitioner's second accomplice exited the car and ran away. (Id.) Chellel was apprehended in the yard of a house down the street; Petitioner was apprehended sitting in the driver's seat of the Monte Carlo. (Id. at 444, 611.) The cash register was found in the back seat of the car. (Id. at 581.)

The next day, police placed Petitioner in a lineup with four fillers from a homeless shelter. (Id. at 1013-1015.) Because Petitioner was the only man who wore his hair in braids, the police had all the participants wear baseball hats. (Id. at 1016.) Taveras, the victim of the first robbery, quickly identified Petitioner as one of the men who robbed him. (Id. at 1017.)

At the conclusion of trial, Petitioner was convicted, and on January 4, 2001 he was sentenced to three concurrent terms of imprisonment of eighteen years. Petitioner is currently incarcerated.

## II. Procedural History

Petitioner made six arguments in his brief on appeal to the Appellate Division. First, he claimed that the lineup was unduly suggestive and so evidence of his identification by Taveras should have been suppressed. (Pet. App. Br. 28.) Second, he claimed that improper comments by the prosecutor in his summation necessitated reversal. (Id. at 34.) Third, Petitioner claimed that his trial should have been severed from that of Chellel because their defenses were mutually

2

antagonistic. (Id. at 38.) Fourth, Petitioner claimed that the trial court should have suppressed the evidence seized from the car, as well as the identification evidence, because no probable cause supported his arrest. (Id. at 42.) Fifth, Petitioner claimed that the trial court should have granted his motion for a mistrial on the grounds that Chellel's counsel made improper comments during his summation. (Id. at 45.) Sixth, Petitioner claims that the verdict of the jury was against the weight of the evidence. (Id. at 48.)

On May 30, 2003, the Appellate Division affirmed Petitioner's judgment of conviction. People v. Ravenell, 307 A.D.2d 977 (App. Div. 2d Dep't 2003). With respect to the identification testimony, the court found that:

> [T]he hearing court correctly denied that branch of his omnibus motion which was to suppress identification testimony. While lineup participants should have the same general physical characteristics as those of the suspect, there is no requirement that a defendant in a lineup be surrounded by individuals nearly identical in appearance. Since the lineup participants in this case were similar to the defendant in age, skin tone, and attire, any minor variations in their appearance did not render the lineup impermissibly suggestive or conducive to irreparable mistaken identification.

Id. at 977-78 (internal citations omitted).

The Appellate Division held that Petitioner's contention regarding the prosecutor's summation was unpreserved for appellate review, that the verdict was not against the weight of the evidence, and that Petitioner's remaining contentions were without merit. Id. at 978.

On January 27, 2005, Petitioner filed the instant Petition, raising all the claims made in his appellate brief. Because it was filed within a year of March 11, 2004, when Petitioner's judgment of conviction became final, the Petition is timely. See 28 U.S.C. § 2254(d); Williams v. Artuz, 237 F.3d 147, 150-51 (2d Cir. 2001) (judgment of conviction becomes final ninety days after the New York Court of Appeals denied leave to appeal).

3

## III. Petitioner's Uncognizable or Procedurally Defaulted Claims

Not all the claims in Petitioner's appellate brief are cognizable or properly preserved for habeas review. With regard to Petitioner's second claim, regarding improper comments by the prosecution in his summation, the Appellate Division expressly relied on a procedural default and his claim is therefore unreviewable. See Ravenell, 307 A.D.2d at 978. Federal courts "do not review arguments procedurally defaulted in state court if the finding of default constitutes an 'independent and adequate state ground' for the state court's decision." Brown v. Greiner, 409 F.3d 523, 532 (2d Cir. 2005). This rule applies when a "state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (internal citation omitted).

Procedural default may be avoided when a petitioner shows (1) cause for the default and prejudice or (2) "that failure to consider the claim will result in miscarriage of justice, i.e., the petitioner is actually innocent." Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003); see Marrero Pichardo v. Ashcroft, 374 F.3d 46, 53-54 (2d Cir. 2004) (miscarriage of justice would occur as a result of procedural default of claim in motion challenging removal order that was "virtually certain to succeed if considered on appeal"). Because Petitioner has not made a showing of actual innocence or of cause for the procedural default, the court will not consider this claim.

Petitioner's fourth claim, regarding the trial court's failure to suppress evidence allegedly obtained without probable cause, will not be considered because it is not cognizable on habeas review. Under Stone v. Powell, 428 U.S. 465, 482 (1976), Fourth Amendment claims cannot be raised on habeas corpus review unless the petitioner was deprived of a full and fair opportunity to litigate his Fourth Amendment claims before trial. See Capellan v. Riley, 975 F.2d 67, 70 (2d

4

Cir. 1992). Petitioner litigated his Fourth Amendment claims, and therefore Stone v. Powell renders collateral review unavailable. See id. at 70 n.1 (New York procedure for litigating Fourth Amendment claims is facially adequate).

Petitioner's sixth claim, in which he argues that the verdict of the jury was against the weight of the evidence, is likewise not cognizable on habeas review, as a habeas court may review a state court verdict only for the sufficiency of the evidence.[1] See Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) ("assessments of the weight of the evidence or the credibility of witnesses are for the jury. . . ; we defer to the jury's assessments of both of these issues").

## III. Petitioner's Remaining Claims

Because the state appellate court rejected Petitioner's remaining claims of legal error on the merits, Petitioner can succeed here only if he can demonstrate that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d).

Petitioner's challenge to the allegedly impermissibly suggestive lineup fails because the appellate court's finding that the lineup was not unnecessarily suggestive was not an unreasonable application of federal law. The photograph of the lineup reveals that the participants appear similar in age, complexion, and attire.[2] The significant difference Petitioner asserts – that Petitioner wore his hair in braids – was minimized by the police decision to have all the participants wear baseball hats in the lineup. "[T]here is no requirement that even in line-ups the accused must be surrounded by persons nearly identical in appearance, however desirable that may be." United States v. Reid, 517 F.3d 953, 966 n.15 (2d Cir. 1975). The responsibility

---

[1] The evidence here was clearly sufficient to support the verdict of guilty. With respect to the October robbery, Petitioner was identified by the victim as a perpetrator. With respect to the second robbery, Petitioner was arrested in the drivers' seat of the car to which the perpetrators of the robbery had run, together with the cash register they stole.

[2] At the request of the court, the Kings County District Attorney's office provided a color copy of the photograph admitted into evidence in Petitioner's state court trial. (Docket Entry #15.)

5

of the police is to minimize the possibility of suggestiveness, not to eliminate it; it is the responsibility of defense counsel to argue to the jury that the lineup conducted by the police was not good enough and therefore that the identification of his client was faulty. Both the police and defense counsel reasonably discharged their duties in this case. The state court did not unreasonably apply federal law by denying Petitioner's claim of impermissible suggestiveness.

Petitioner makes two interrelated claims regarding his joint trial with co-defendant Chellel. First, he argues that the trial court should have severed his trial from Chellel's, because the evidence against Chellel was substantially stronger than the evidence against Petitioner, as Chellel was also identified as a perpetrator by the victims of the November robbery. Second, Petitioner argues that the court should have granted his counsel's motion for a mistrial based on the prejudicial summation remarks of Chellel's counsel: (1) that Petitioner's alibi witness was untrustworthy (Tr. 1307); and (2) that the prosecution might indeed have proven that Ravenell had committed the November robbery (Id. at 1271).

The Supreme Court, in interpreting the standard under which a federal district court should grant a severance motion under Rule 14, has held that a court should grant the motion "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 539 (1993). Such a risk might occur, for example, if evidence normally inadmissible if a defendant were tried alone is admitted against a co-defendant, or if essential exculpatory evidence normally available were unavailable in a joint trial. Id. "When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but . . . less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." Id.

Here, even if Petitioner had made a motion to sever his trial from Chellel's (which he did not), the risk of prejudice was not so high as to necessitate severance. Petitioner does not argue that evidence that would normally have been admissible only against Chellel was admitted against Petitioner, or that exculpatory evidence that would normally have been admissible as to Petitioner was excluded because it was a joint trial. Furthermore, the trial court gave the jury appropriate limiting instructions that "each counsel represents his or her own client and that . . . other counsel's observations should be confined to the evidence against his client and no one else's." (Tr. 1272.) The arguments by Chellel's counsel, although not helpful to Petitioner's case, represented forceful advocacy, but did not seriously jeopardize Petitioner's right to a fair trial. The arguments of Chellel's counsel regarding the credibility of Petitioner's alibi witness, for example, were necessitated by the introduction of that witness's grand jury testimony at trial which indicated that Chellel and Petitioner knew each other – testimony harmful to the efforts of Chellel's counsel to portray Chellel as a wrongfully arrested innocent bystander. (Id. at 1199). The argument of Chellel's counsel that the People might have proven their case against Petitioner may have been improper, but the court gave an appropriate limiting instruction. (Id. at 1272.)

The Supreme Court in Zafiro rejected the argument that severance was required every time co-defendants might have conflicting defenses, declining to adopt such a bright-line rule. Zafiro, 506 U.S. at 538-39. Because the trial court gave appropriate limiting instructions, it was not an unreasonable application of Zafiro for the Appellate Division to reject Petitioner's claim that severance was required. In addition, because the statements of Chellel's counsel were largely within the bounds of effective advocacy, the Appellate Division properly denied Petitioner's claim that those statements required a mistrial.

7

## IV. Conclusion

For the reasons stated above, the Petition is DENIED in its entirety. A certificate of appealability shall not issue. The Clerk of the Court is directed to close the case.

SO ORDERED.

                                                               s/Nicholas G. Garaufis

Dated: Brooklyn, New York                      NICHOLAS G. GARAUFIS
      February __, 2009                            United States District Judge